[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13546

_____

NALCO COMPANY LLC,
a Delaware Limited Liability Company,

Plaintiff-Appellee,

*versus*

LAURENCE BONDAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:21-cv-00727-JLB-NPM

_____

Before BRANCH, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Laurence Bonday, a former employee of Nalco Company LLC, filed an arbitration demand against Nalco, alleging it violated its severance plan by demoting him without offering him severance pay. Nalco responded that a court needed to determine the scope of the arbitration agreement between it and Bonday before the arbitration could proceed. But before a court could reach the arbitrability issue, the arbitrator concluded Bonday's severance claim fell outside the scope of the arbitration agreement and awarded him nothing on that claim. Instead, the arbitrator awarded Bonday $129,465.50 on a claim he never raised: that Nalco discriminated against him in violation of the Employee Retirement Income Security Act of 1974.

Nalco moved to vacate the arbitration award, arguing that the arbitrator "exceeded [her] powers" by deciding the scope of the arbitration agreement and "conjuring up claims that Bonday never made." The district court granted the motion vacating the arbitration award, concluding the arbitrator exceeded her powers by (1) interpreting the scope of the arbitration agreement and finding Bonday's claims arbitrable, and (2) awarding Bonday relief on an ERISA discrimination claim he never raised. Because we agree with the district court's second conclusion that the arbitrator exceeded her powers by awarding Bonday relief on a claim he never raised, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Bonday began working for Nalco in 2005. When he joined the company, Bonday signed two agreements related to his right to seek severance pay—a severance plan and an arbitration agreement.

The severance plan—formed under ERISA—entitled Bonday to severance pay if his job at Nalco was eliminated. Under the plan, Bonday could file a claim with Nalco for severance pay if the company reorganized or eliminated his job. If Nalco denied the claim, Bonday could appeal the decision internally.

Bonday and Nalco's arbitration agreement, meanwhile, required him and the company to submit "all claims or controversies" between them that "alleg[ed] violations of federal, state, local[,] or common law" to arbitration before the American Arbitration Association. But there were two exceptions. "[C]laims related to . . . controversies over awards of benefits or incentives under the [c]ompany's . . . employee benefits plans or welfare plans that contain an appeal procedure" were not arbitrable under the agreement. And questions about "the enforceability, revocability[,] or validity" of the arbitration agreement "[could] only be resolved by a court."

The severance plan and the arbitration agreement came into play fourteen years later, in 2019, when Nalco eliminated Bonday's position and demoted him to a consultant. Bonday wasn't interested in the new consulting job, and he thought the demotion entitled him to severance pay. So, Bonday asked the company's

human resources department if he could receive severance pay and leave the company. The department denied Bonday's request. Bonday appealed the denial to the vice president of human resources, but the vice president upheld the denial. With his severance request denied, Bonday quit his job at Nalco.

Six months later, he filed an arbitration demand with the American Arbitration Association, alleging that Nalco violated its severance plan by not offering him severance pay after demoting him to a consultant. Bonday's arbitration demand requested only one form of relief: that Nalco "follow the . . . [s]everance p[lan]" and give him severance pay. To support his severance claim, Bonday alleged that Nalco offered severance pay to two similar employees who were also demoted to the consultant position.

Before an arbitrator was appointed, Nalco appeared and asked the Association to dismiss Bonday's arbitration demand because his severance claim was a "claim[] related to . . . [a] controvers[y] over awards of benefits or incentives under" an "employee benefits plan[] or welfare plan[] that contain[ed] an appeal procedure," which Nalco argued placed it outside the scope of the arbitration agreement since the company's severance plan included an appeal procedure. The Association responded that Nalco would have to raise its arbitrability argument to the arbitrator once appointed—or, alternatively, to a court.

Nalco chose to go to federal court. The company sought a declaratory judgment that Bonday's severance claim was not arbitrable under the arbitration agreement. Nalco then appeared

before the arbitrator and moved for a stay until the district court determined whether Bonday's severance claim was arbitrable.

The arbitrator denied the stay motion and found that Bonday's demand raised arbitrable claims. The arbitrator assumed that Nalco was correct that Bonday's severance claim wasn't arbitrable under the arbitration agreement. Still, in the arbitrator's view, Bonday's demand raised "other possible claims." Specifically, the arbitrator read Bonday's demand as "possibl[y]" raising an ERISA discrimination claim. Bonday "possibl[y]" raised that claim, the arbitrator explained, because the severance plan was formed under ERISA, and Bonday alleged that other employees were offered severance pay when he wasn't. The arbitrator concluded that this "possible" ERISA discrimination claim was arbitrable under the arbitration agreement and decided the arbitration would proceed.

Proceed it did. The arbitrator held a hearing, and, at the end of it, she issued a final award on Bonday's possible ERISA discrimination claim. The arbitrator agreed with Nalco that Bonday's severance claim was not arbitrable. But the arbitrator awarded Bonday "$122,870 in equitable relief," along with $6,595.50 in fees and costs, based on the ERISA discrimination claim she read into the demand.

In response, Nalco returned to the district court and moved to vacate the award, arguing that the arbitrator "exceeded [her] powers" by deciding the scope of the arbitration agreement without waiting for the district court to decide whether Bonday's claims were arbitrable. Specifically, Nalco asserted that whether a claim

was arbitrable was a question about the arbitration agreement's "enforceability, revocability[,] or validity[,]" which the agreement had delegated to "a court" and not the arbitrator. And instead of waiting for the district court's arbitrability determination, Nalco argued, the arbitrator "decided the arbitrability issue by conjuring up claims that Bonday never made" and found those claims arbitrable.

For two reasons, the district court agreed that the arbitrator exceeded her powers and vacated the arbitration award. First, the district court concluded that the arbitrator exceeded her powers by ruling on the arbitrability of Bonday's demand because the arbitration agreement reserved determinations on arbitrability issues to the court and not the arbitrator. And second, the district court explained that the arbitrator exceeded her powers by granting relief on a "possible ERISA discrimination claim" because Bonday "did not submit" one in his demand.

Bonday appeals the order vacating the arbitration award.

## STANDARD OF REVIEW

When reviewing a "district court's decision on [a] motion to vacate [an] arbitration award, we accept the district court's findings of fact to the extent they are not clearly erroneous and review

22-13546                Opinion of the Court                 7

questions of law *de novo*." *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1298–99 (11th Cir. 2015) (cleaned up).

## DISCUSSION

The district court gave two reasons for its conclusion that the arbitrator exceeded her powers:  (1) she ruled on the scope of the arbitration agreement even though the agreement reserved that determination for the court; and (2) she granted relief on a claim—ERISA discrimination—that Bonday did not raise in his demand for arbitration.  Because we agree with the district court's second reason for vacating the arbitration award, we do not reach the first reason.[1]

The Federal Arbitration Act allows a district court to vacate an arbitration award when "the arbitrator[] exceeded [her] powers."  *See* 9 U.S.C. § 10(a)(4).  It is "well-established that an arbitrator 'can bind the parties only on issues that they have agreed to submit to h[er].'"  *Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers Int'l Union, AFL–CIO, Loc. No. 361*, 726 F.2d 698, 700 (11th Cir. 1984) (quoting *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, 611 F.2d 580, 583 (5th Cir. 1980)).  An arbitrator therefore exceeds her powers when she decides an "issue [that] was not submitted

---

[1] Although we have our doubts about the first reason.  *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1298–1300 (11th Cir. 2022); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331–32 (11th Cir. 2005).

8                    Opinion of the Court                    22-13546

to" her for determination. *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1195 (11th Cir. 1995) (citing 9 U.S.C. § 10(a)(4)).

Here, Bonday did not submit an ERISA discrimination claim to the arbitrator. Bonday's arbitration demand raised only one claim: that Nalco improperly refused his request for severance after demoting him to consultant. And Bonday asked for one form of relief on that claim: that Nalco "follow the . . . [s]everance p[lan]" and give him severance pay. He only referenced the fact that other demoted employees were allegedly offered severance pay in support of his contention that he too should be entitled to severance pay. But Bonday didn't mention ERISA or discrimination anywhere in his arbitration demand, and he didn't ask for damages as a result of any discrimination. Instead, his demand was directed to Nalco's refusal to pay him severance. By awarding Bonday relief on an ERISA discrimination claim that he did not submit to arbitration, the arbitrator exceeded her powers. *See id.*

We reached a similar conclusion in *Davis*. There, Davis filed an arbitration demand that requested "compensatory damages, punitive damages, recis[s]ion, prejudgment interest, and costs," but "did not [request] attorneys' fees" or raise the issue to the arbitration panel. *Id.* at 1187.[2] Even though Davis did not raise the

---

[2] *Davis* also involved a AAA arbitration. *See* 59 F.3d at 1187 ("Thus, in 1991, Davis initiated an arbitration before the AAA against PSI and Rukrigl, asserting claims for fraud, breach of fiduciary duty and negligence, and alleging violations of federal securities laws and Florida's Blue Sky Laws." (citation omitted)).

22-13546                Opinion of the Court                9

attorneys' fees issue, the arbitration panel decided that the parties would "bear all of [their] . . . attorneys' fees." *Id.* After the district court confirmed the entire award, we vacated as to the portion that awarded attorneys' fees. *Id.* at 1195. The arbitration panel, we explained, exceeded its powers by deciding an "attorneys' fees issue [that] was not submitted to" it. *Id.*

We have the same problem here. The arbitrator exceeded her powers because the ERISA discrimination claim on which she granted relief "was not submitted to" the arbitrator. *See id.*

Bonday and the dissenting opinion resist this conclusion. First, they argue that, in *Davis*, "[t]he problem was that the parties *never* raised the issue of attorneys' fees during the arbitration." They contend that Bonday's case is different because he eventually raised the ERISA claim with the arbitrator during the arbitration proceedings, after the arbitrator had already read the ERISA discrimination claim into his demand. But Bonday can't point to anything in the record supporting his contention that he actually put forward an ERISA discrimination claim. And when asked at oral argument to do so, he admitted there was no record of him submitting this claim to the arbitrator. So Bonday's case is exactly like *Davis*—the arbitrator decided a claim that Bonday never submitted for arbitration.

Next, Bonday and the dissenting opinion assert that because Bonday appeared pro se in the arbitration, the arbitrator did not exceed her powers by liberally construing his demand to include an ERISA discrimination claim. Bonday is correct that in federal court

10                    Opinion of the Court                    22-13546

"[p]ro se pleadings are . . . liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (cleaned up).  But even if we were to apply that principle to Bonday's demand, it wouldn't help him because the "leniency" provided to pro se litigants "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (cleaned up).  To "liberally construe" doesn't mean to make up.  But that's what the arbitrator did here.  After Bonday submitted a severance claim that the arbitrator concluded was not arbitrable, she rewrote Bonday's demand to include an ERISA discrimination claim and concluded it was arbitrable.  She exceeded her powers by doing so.

Finally, Bonday and the dissenting opinion note that the arbitrator could have allowed Bonday to amend his demand to include an ERISA discrimination claim even if his original demand didn't include one.  So, they argue, the arbitrator did not exceed her powers by choosing instead to read an ERISA discrimination claim into his demand.  They may be right that Bonday could have amended his demand, but the relevant question is not what claims he *could* have submitted to the arbitrator via an amended demand.  Rather, the relevant question is what claims Bonday *did* submit to the arbitrator. *See Davis*, 59 F.3d at 1195–96 (concluding arbitration panel exceeded its powers in deciding attorneys' fees issue that plaintiff could have raised but did not include among his claims for arbitration).  Again, *Davis* is controlling. *See id*.  Even if Bonday could have amended his demand to include an ERISA discrimination claim, he didn't do so.  And as noted above, the leniency

afforded to pro se litigants does not give courts or arbitrators license to serve as de facto counsel for a party. *See Campbell*, 760 F.3d at 1168–69. So the argument on this point also fails.

## CONCLUSION

The district court correctly vacated the arbitrator's award granting Bonday relief on a claim he never submitted to the arbitrator. We therefore affirm the district court's order vacating the award.

**AFFIRMED**.

22-13546                TJOFLAT, J., Dissenting                1

TJOFLAT, Circuit Judge, dissenting:

Ecolab, the parent company of Nalco Company LLC, maintains a standard dispute resolution agreement with its employees, entitled the "Ecolab Mediation and Arbitration Agreement" ("Arbitration Agreement" or "Agreement"). The Agreement provides for the arbitration of disputes between Ecolab or Nalco and their respective employees and specifies that "[a]ll Disputes shall be finally and conclusively resolved by final and binding arbitration" conducted pursuant to the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules"). This appeal concerns an arbitration conducted under the AAA Rules and the award a AAA arbitrator entered in favor of a former Nalco employee, Laurence Bonday.

After the award issued, Nalco moved the District Court below to vacate the award pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, on the ground that the arbitrator lacked jurisdiction under the Agreement to make the award. Nalco assumed a heavy burden. It would not be enough if Nalco established that the arbitrator committed an error—even a serious error—in making the award. Nalco would have to prove to the Court that the arbitrator, in conducting the arbitration and making the award, did not *even arguably* interpret the parties' Agreement, including the AAA Rules it incorporated. If Nalco failed, the arbitrator's decision would stand intact as a matter of law—even if the Court thought it was meritless. *See E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S. Ct. 462 (2000);

2                    TJOFLAT, J., Dissenting                    22-13546

*Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364 (1987). So the sole question for the District Court was "whether the arbitrator (even arguably) interpreted the parties' [Agreement and the AAA Rules], not whether [she] got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 2068 (2013).

This burden was too much for Nalco to carry, so as if the burden did not exist, it persuaded the District Court to treat its motion to vacate practically as if Bonday's Demand was a complaint in a civil action and Nalco had moved to dismiss it for failure to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6). Nalco urged the Court to do that even though it was hornbook law that the Federal Rules of Civil Procedure have little application in a proceeding for vacatur of an arbitration award under 9 U.S.C. § 10.

The District Court did as Nalco requested. Ignoring the burden of proof the Supreme Court has placed on movants for § 10 vacatur, without considering the AAA Rules the Arbitration Agreement required the arbitrator to apply, and without fully considering this Court's and the Supreme Court's precedent, the District Court granted Nalco's motion and vacated the arbitrator's award. It did so in part by relying on a case, *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186 (11th Cir. 1995), that is inapplicable to the present dispute.

The District Court handed down a lawless decision. It has no foundation in the law—in any law, anywhere but in Nalco's lawyers' imagination. Today, the Majority does the unthinkable. It affirms a trial court decision that cannot stand because it was handed

22-13546                TJOFLAT, J., Dissenting                3

down in defiance of the law. It requires no subtle analysis to say that this Court cannot do that. I dissent. To quote Justice Alito, "I am stunned."[1]

This dissent proceeds as follows: Part I explains why Congress enacted the FAA and what it sought to achieve. Congress limited the courts' role in the arbitration process. Over time, in a series of decisions that culminated in *Sutter,* the Supreme Court circumscribed that limited role and with the Courts of Appeals addressed the issues Nalco raised here: who decides questions of arbitrability and what is the role of district courts in reviewing arbitral awards. The developments of this case are the focus of Part II. Part III addresses Nalco's failure to satisfy *Sutter*'s "even arguably" standard and the District Court's error in vacating the arbitral award. Part IV demonstrates *Davis*'s inapplicability. Part V concludes.

## I. Arbitration Basics

### *The FAA's Purpose*

Congress passed the FAA in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 1651 (1991). The FAA's provisions embody "a liberal federal policy favoring arbitration agreements." *Id.* at 25, 111

---

[1] *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 753 (2025) (Alito, J., dissenting from denial of application to vacate order).

4                    TJOFLAT, J., Dissenting                    22-13546

S. Ct. at 1651 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)).

The FAA reflects Congress's view that arbitration boasts several advantages as an alternative to judicial dispute resolution. By agreeing to arbitrate, parties "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 3354 (1985). The benefits of arbitration include "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685, 130 S. Ct. 1758, 1775 (2010).

The "primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Id.* at 682, 130 S. Ct. at 1773 (internal quotation marks omitted). When parties agree to arbitrate based on a set of specified rules, those rules become terms of the contract, and our courts must honor them. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1256 (1989) (holding that parties who agree to arbitrate may "specify by contract the rules under which that arbitration will be conducted"). Often, parties will incorporate the rules of an arbitration organization by reference in their contract, as the parties did here by adopting the AAA Rules.

*Agreements to Arbitrate*

22-13546              TJOFLAT, J., Dissenting                  5

The FAA generally protects the right to enforce arbitration agreements. *See* 9 U.S.C. § 2. It preempts state law rules that disfavor arbitration, directly or indirectly. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341–44, 131 S. Ct. 1740, 1746–48 (2011). And it provides parties with judicial recourse when their counterparts try to circumvent their obligations to arbitrate. For instance, 9 U.S.C. § 3 requires courts to stay pending suits or proceedings when the issues involved may be referred to arbitration. And 9 U.S.C. § 4 allows a party to apply for an order compelling another party to arbitrate. Together, these provisions ensure that parties receive the arbitration to which they agreed.

Of course, these remedies assume the existence of a valid, enforceable arbitration agreement between the parties. Because "arbitration is strictly a matter of consent," courts must apply contract-law principles to "decide any questions concerning the formation or scope of an arbitration agreement before ordering parties to comply with it." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298, 130 S. Ct. 2847, 2857 n.6 (2010).

Broadly speaking, the question of "arbitrability" is the question of whether the parties have *agreed* to arbitrate a particular dispute. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148, 144 S. Ct. 1186, 1192 (2024). This question is separate from the merits of the underlying dispute, and it is separate from the matter of *who* gets to decide *which* questions. The Supreme Court recently explained the distinctions as follows:

A contest over "the merits of the dispute" is a first-order disagreement, the resolution of which depends on the applicable law and relevant facts. The parties may also have a second-order dispute—"whether they agreed to arbitrate the merits"—as well as a third-order dispute—"who should have the primary power to decide the second matter." Under contract principles, these second- and third-order questions are also matters of consent. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."

*Id.* at 148–49, 144 S. Ct. at 1192–93 (citations omitted). In addition to these questions, parties may "specify by contract the rules under which th[e] arbitration will be conducted." *Volt*, 489 U.S. at 479, 109 S. Ct. at 1256.

This all simply means that the parties' agreement dictates how disputes are resolved at every level of abstraction. By default, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923 (1995). So one of the questions courts must ask is: "Did the parties agree to submit the arbitrability question itself to arbitration?" *Id.* at 943, 115 S. Ct. at 1923. To answer that question in the affirmative, a court must find "clear and unmistakable evidence that they did so." *Id.* at 944, 115 S. Ct. at 1924 (cleaned up). But there is no doubt that

22-13546                TJOFLAT, J., Dissenting                7

parties *can* agree to arbitrate arbitrability, and those agreements are as enforceable as any other. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65, 139 S. Ct. 524, 527 (2019).

On several occasions, this Court has considered whether, by incorporating the rules of the American Arbitration Association into their arbitration agreement, parties clearly and unmistakably agreed to arbitrate arbitrability. *See, e.g., Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284 (11th Cir. 2022). In those cases, we have consistently held that the incorporation of such rules *does* suffice to vest the arbitrator with the authority to answer questions of arbitrability. *Terminix*, 432 F.3d at 1332; *Attix*, 35 F.4th at 1297–98. That is because these rules generally contain provisions explicitly granting each AAA arbitrator "the power to rule on his or her own jurisdiction," including with respect to "the existence, scope, or validity of the arbitration agreement." *Id.*

### Judicial Review of Awards

As the Supreme Court has explained, the right to enforce arbitration agreements "would not be a right to arbitrate in any meaningful sense if generally applicable principles of state law could be used to transform traditional individualized arbitration into the litigation it was meant to displace through the imposition of procedures at odds with arbitration's informal nature." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 651, 142 S. Ct. 1906, 1918 (2022) (cleaned up). The same is true regarding principles of federal procedural law. A court infringes on the right to arbitrate when it

8                    TJOFLAT, J., Dissenting                    22-13546

imposes unnecessary hurdles rooted in our more formal system of litigation.

Because public policy favors arbitration, judicial review of arbitration awards is quite limited. *Butterkrust Bakeries v. Bakery, Confectionary & Tobacco Workers Int'l Union, AFL-CIO, Loc. No. 361*, 726 F.2d 698, 699 (11th Cir. 1984). The FAA provides two key mechanisms for challenging arbitration awards: vacation under 9 U.S.C. § 10 and modification or correction under 9 U.S.C. § 11. Relevant here, 9 U.S.C. § 10(a)(4) permits courts to vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Similarly, 9 U.S.C. § 11(b) permits courts to modify an award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." The court will consider an application for either order by a party's motion, without the need for a separate contract action. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S. Ct. 1396, 1402 (2008).

But those provisions do not permit courts to second-guess every decision an arbitrator makes. Regarding § 10, the Supreme Court has explained:

> A party seeking relief under that provision bears a heavy burden. "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen,* 559 U.S. at 671, 130 S. Ct. 1758. Because the parties "bargained for the arbitrator's

construction of their agreement," an arbitral decision
"even arguably construing or applying the contract"
must stand, regardless of a court's view of its (de)mer-
its. *Eastern Associated Coal Corp. v. Mine Workers,* 531
U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354
(2000) (quoting *Steelworkers v. Enterprise Wheel & Car
Corp.,* 363 U.S. 593, 599, 80 S. Ct. 1358, 4 L. Ed. 2d
1424 (1960); *Paperworkers v. Misco, Inc.,* 484 U.S. 29,
38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987); internal
quotation marks omitted). Only if "the arbitrator
act[s] outside the scope of his contractually delegated
authority"—issuing an award that "simply reflect[s]
[his] own notions of [economic] justice" rather than
"draw[ing] its essence from the contract"—may a
court overturn his determination. *Eastern Associated
Coal,* 531 U.S., at 62, 121 S. Ct. 462 (quot-
ing *Misco,* 484 U.S., at 38, 108 S. Ct. 364). So the sole
question for us is whether the arbitrator (even argua-
bly) interpreted the parties' contract, not whether he
got its meaning right or wrong.

*Sutter,* 569 U.S. at 569, 133 S. Ct. at 2068 (alterations in original).

In *Sutter,* the Supreme Court considered a § 10(a)(4) chal-
lenge to an arbitrator's finding that the parties' contract permitted
class arbitration. *Id.* at 566–67, 133 S. Ct. at 2067. The contract—
between a pediatrician, John Sutter, and a health insurance com-
pany, Oxford Health Plans—contained a clause mandating the ar-
bitration of all claims "arising under this Agreement . . . , pursuant
to the rules of the American Arbitration Association with one arbi-
trator." *Id.* After Sutter attempted to bring a class action against

Oxford in state court, the court referred the dispute to arbitration on Oxford's motion to compel. *Id.* The appointed arbitrator then determined, based on a plain reading of the arbitration clause, that the parties' agreement permitted class arbitration. *Id.*

Oxford filed a § 10(a)(4) motion to vacate on the basis that the arbitrator "exceeded [his] powers." *Id.* (alteration in original). The district court denied the motion, and the Third Circuit affirmed. *Id.* While the arbitration was pending, the Supreme Court decided *Stolt-Nielsen*, in which the Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* (quoting *Stolt-Nielsen*, 559 U.S. at 684, 130 S. Ct. at 1758).

Citing that case, Oxford asked the arbitrator to reconsider his decision regarding class arbitration, and the arbitrator declined. *Id.* at 567–68, 133 S. Ct. at 2067–68. In *Stolt-Nielsen*, the parties had *stipulated* that there was no agreement authorizing class arbitration. *Id.* Whereas in *Sutter*, the parties disputed the meaning of their contract. *Id.* Resolving the dispute, the arbitrator again "found that the arbitration clause unambiguously evinced an intention to allow class arbitration." *Id.*

The district court and Third Circuit again rejected Oxford's renewed effort to have the decision vacated under § 10(a)(4). *Id.* The Supreme Court granted certiorari "to address a circuit split on whether § 10(a)(4) allows a court to vacate an arbitral award in similar circumstances." *Id.* The Court emphasized that, "[u]nder the FAA, courts may vacate an arbitrator's decision only in very

22-13546                TJOFLAT, J., Dissenting                11

unusual circumstances." *Id.* Applying the appropriate, limited standard of review under the FAA, the Court held that, "[s]o long as the arbitrator was 'arguably construing' the contract—which this one was—a court may not correct his mistakes under § 10(a)(4)." *Id.* at 572, 133 S. Ct. at 2070. The Court concluded:

> In sum, Oxford chose arbitration, and it must now live with that choice. Oxford agreed with Sutter that an arbitrator should determine what their contract meant, including whether its terms approved class arbitration. The arbitrator did what the parties requested: He provided an interpretation of the contract resolving that disputed issue. His interpretation went against Oxford, maybe mistakenly so. But still, Oxford does not get to rerun the matter in a court. Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all. Because he did, and therefore did not 'exceed his powers,' we cannot give Oxford the relief it wants.

*Id.* at 573, 133 S. Ct. at 2071.

This Court's own cases have expressed the same sentiment. *See, e.g.*, *S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352 (11th Cir. 2013). In *Thomas*, we noted that 9 U.S.C. §§ 10 and 11 "together give 'substan[ce to] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway.'" *Id.* at 1358 (alteration in original) (quoting *Hall St. Assocs.*, 552 U.S. at 588, 128 S. Ct. at 1405). We emphasized "the extraordinary deference with which arbitral

decisions are treated under § 10(a)(4)." *Id.* at 1359. And we reiterated that, under *Sutter*, "if the arbitrator (even arguably) interpreted the parties' contract, a court must end its inquiry and deny a § 10(a) motion for vacatur." *Id.* (internal quotation marks omitted).

The decisions of the District Court and Majority here reflect none of the deference articulated in *Sutter* and *Thomas*. The District Court, in its order granting Nalco summary judgment and vacating the final award, never even acknowledged that its role was to ask "if the arbitrator (even arguably) interpreted the parties' contract," *see id.*, including the AAA Rules incorporated therein. If the Court had applied this limited scope of review, it would have encountered a host of rules—especially AAA Rules 5, 6, 8, and 48—bearing directly on the present dispute.

Even if the Court would have interpreted those rules differently, that *still* would not be enough to set aside the final award. The Court would have had to conclude that the arbitrator did not even *arguably* interpret those rules. In failing to consider the rules at all, the District Court effectively co-opted the arbitrator's role for itself. That is manifestly not what Congress intended when it enacted the FAA, and it is not the process the parties bargained for.

## II.  Procedural History

With this legal backdrop in mind, I turn to the facts of this case. To understand how far astray the District Court and the Majority have drifted from established law, I find it necessary to chronicle the history of this arbitration.

22-13546                TJOFLAT, J., Dissenting                13

*Initiating Arbitration*

The Arbitration Agreement between Bonday and Ecolab (Nalco's parent company) expressly adopts the AAA Rules as providing an alternative dispute resolution forum.[2] AAA Rule 4 dictates how a party to an arbitration agreement may initiate arbitration. The party may do so by filing at any AAA office a written notice, i.e., a "Demand," of its intention to arbitrate the dispute. "The Demand shall set forth . . . a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location."[3] Bonday, proceeding pro se, filed his Demand for arbitration on December 29, 2020.

---

[2] Under AAA Rule 2, an employer seeking to make use of AAA's arbitration services must, "at least 30 days prior to the planned effective date" of its agreement, "notify the Association of its intention to do so and . . . provide the Association with a copy of the employment dispute resolution plan." Presumably, AAA was notified of Ecolab's (and thus Nalco's) adoption of the employment resolution plan at some time prior to the filing of Bonday's Demand.

[3] AAA Rule 4(b)(i)(1). The form of the Demand "shall not be subject to technical pleading requirements." *Id.* at 4(c). The respondent party "may file an Answer within 15 days," which should contain a "brief response to the claim and the issues presented." *Id.* at 4(b)(ii). If there is no Answer, "Respondent will be deemed to deny the claim," and the "[f]ailure to file an answering statement shall not operate to delay the arbitration." *Id.* Additionally, the respondent "[m]ay file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand." *Id.* at 4(b)(iii). Finally, under AAA Rule 6, "[a] party must object to the jurisdiction of the arbitrator or to the arbitrability of the claim no later than the filing of answering statement to the claim or counterclaim that gives rise to the objection."

Here, after the parties' Rule 8 management conference, the arbitrator provided additional time for Nalco to file its answer and counterclaims. *See infra.*

14                    TJOFLAT, J., Dissenting                    22-13546

On January 8, 2021, following preliminary review of the notice Bonday filed, AAA's Employment Filing Team informed the parties by letter that the dispute would be arbitrated under the AAA Rules, requested that Nalco pay the $2,200 filing fee by January 22, and told the parties that if they had any questions, they should "email" the Employment Filing Team.[4]

---

Following the conference on August 27, 2021, pursuant to AAA Rule 8, the arbitrator gave Nalco until September 10 and 24, 2021, to file an answer and any counterclaims. Nalco did not do so.

[4] The parties' Arbitration Agreement provided that Nalco would "pay any mediation or arbitration filing fee required by AAA." The Employment Filing Team's letter echoed this requirement:

> Per the agreement submitted with this filing, the employer is responsible for payment of the full filing fee, $2,200.00. Accordingly, we request that the employer submit payment in the amount of $2,200.00 on or before January 22, 2021. Upon receipt of the balance of the filing fee, the AAA will proceed with administration.

The letter informed the parties:

> The AAA's administrative fees are based on filing and service charges. Arbitrator compensation is not included in this schedule. The AAA may require arbitrator compensation deposits in advance of any hearings. Unless the employee chooses to pay a portion of the arbitrator's compensation, the employer shall pay all of the arbitrator's fees and expenses.

Further, the "employer's full share is due as soon as the employee meets his or her filing requirements." The letter "confirm[ed] that [the] employee's filing requirements ha[d] been met."

22-13546          TJOFLAT, J., Dissenting          15

Nalco filed no answer. Instead, on January 19, Nalco's attorney, René Thorne, sent AAA a letter via email stating that the parties' Arbitration Agreement did not provide for the arbitration of claims presented in Bonday's Demand.[5] The letter cited the Agreement's exclusion of disputes "related to . . . controversies over awards of benefits or incentives under [Nalco]'s stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies." Thorne asked AAA to terminate the arbitration.

In her January 19 letter, Thorne referred to Section 2.E of the parties' Arbitration Agreement, which provides that an arbitrable "'Dispute' does not include claims related to: . . . controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such

---

[5] Thorne was a partner in the New Orleans office of Jackson Lewis P.C., a nationwide law firm. She served as counsel for Nalco throughout this controversy. I assume that before she wrote her January 19 letter to the AAA, she read, or was thoroughly informed by subordinates of, the following: the parties' Arbitration Agreement, the AAA Rules, Sections 2, 4, 6, 8, 9, 10 and 11 of the FAA, the decisions of the United States Supreme Court interpreting the FAA—including, in particular, the decisions in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588, 128 S. Ct. 1396 (2008); *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2011); and *Henry Schein v. Archer and White Sales*, 139 S. Ct. 524 (2019)—and the decisions of this Court bearing on the issues Thorne raised in the instant arbitration and in the District Court declaratory judgment action Thorne brought for Nalco against Bonday while this arbitration was underway. Any lawyer litigating those issues in a AAA arbitration in the Eleventh Circuit would have to be thoroughly familiar with this body of law.

controversies." Therefore, Thorne argued that the dispute Bonday's Demand presented was not arbitrable.

⋆        ⋆        ⋆

Under AAA Rule 6, "[a] party must object . . . to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection." Rule 6 plainly contemplates that the objection should be contained in the party's answer or in an earlier motion addressed *to the arbitrator*.[6] Nalco never filed an answer, and it improperly addressed its objection to AAA administrators. Nalco seemingly did everything it could to avoid initiating the arbitration process, knowing that it would give the arbitrator an opportunity to interpret the contract, triggering the heavy burden imposed by *Sutter* and *Thomas* when Nalco would inevitably have to challenge the final award under 9 U.S.C. § 10(a)(4). All of Nalco's subsequent tactics were likely calculated to try to avoid this burden of proof, hoping to have the arbitration administratively terminated *before* an arbitrator became involved.

⋆        ⋆        ⋆

On January 20, 2021, Larry Allston, a Finance Supervisor for AAA, emailed both parties, requesting comment from Bonday regarding Thorne's letter. Bonday responded in a January 22 email,

---

[6] AAA Rule 6 also provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

22-13546          TJOFLAT, J., Dissenting          17

copying Thorne, "requesting continuation of the arbitration process." So, on January 26, at 2:55 PM, Allston, responding to Thorne's January 19 email, sent Thorne (and Bonday) an email stating:

> As the parties are not in agreement, this matter will proceed forward since the claimant has met their filing requirements required in the rules.

> As a neutral administrative agency, it is not our role to interpret the parties' contract and determine arbitrability. Our role is only to determine whether or not the filing party met filing requirements contained in the Rules by filing a demand for arbitration accompanied by an arbitration clause providing for administration by the AAA under its Rules or by naming the AAA as the dispute resolution provider. Arbitrability issues are decided only by the arbitrator, once appointed, or a court of jurisdiction.

> Therefore, we ask the employer to please forward the $2200 outstanding fee by February 2, 2021.

⋆          ⋆          ⋆

This was Allston's way of informing Thorne (and Bonday) that the AAA, acting administratively, could not consider and rule on her objection to the arbitration of Bonday's Demand and that an arbitrator, once appointed, would do so. But that could not occur unless and until Nalco paid the agreed-upon $2200 fee.

⋆          ⋆          ⋆

Less than two hours later, at 4:35 PM, Thorne replied to All-ston's 2:55 PM email with copy to Bonday, stating:

> Section 2.E of the Arbitration Agreement specifically provides that it "does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Such disputes can only be resolved by a court of competent jurisdiction." In light of this plain language, AAA does not have jurisdiction over this matter unless and until a court of competent jurisdictions makes a decision on arbitrability should Mr. Bonday continue to object to arbitration in a court. As such, we again respect-fully request that the matter be dismissed.

★          ★          ★

By invoking Section 2.E of the Agreement, Thorne implic-itly acknowledged its validity. It would make no sense to argue about the scope of the word "Dispute" in the Agreement if Nalco believed the Agreement was invalid or unenforceable. And because the Agreement adopted the AAA Rules, the arbitrator had jurisdic-tion under Rule 6 "with respect to [its] existence, scope or validity." If the Agreement concededly existed and was valid, Nalco could only argue that Bonday's claims were outside the Agreement's "scope." But the clause Nalco cited had nothing to do with that: it referred only to questions of "enforceability, revocability or valid-ity." Indeed, that clause seemingly references Section 2 of the FAA, which provides:

22-13546                TJOFLAT, J., Dissenting                19

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be *valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2 (emphasis added).

Assuming Thorne had consulted the AAA Rules, she would know that the AAA, acting administratively, lacked the authority to terminate the arbitration purely on the basis of her objection. The objection would have to be submitted to an arbitrator, and that could not happen unless and until Nalco paid the $2200 fee. Notwithstanding the inapplicability of the quoted Section 2.E provision, Thorne relied on it repeatedly in the hope that the AAA would somehow use it to stop the arbitration before it began.

★          ★          ★

On February 5, at 12:15 PM, Allston emailed the parties: "Payment from the employer was not received by the requested deadline as the employer has chosen not to recognize the AAA's jurisdiction based on their interpretation of the party's contract. We are unable to proceed forward without these fees. As a result, we have closed this matter." At 1:34 PM, Bonday responded:

20                    TJOFLAT, J., Dissenting                    22-13546

> I must object to the closing of this case and request that it be kept open and that Ecolab make the required payment as soon as possible.
>
> It is my understanding that Ecolab must abide by the rules and ruling of the arbitration process, not only when they view it as advantages to themselves.
>
> M[s.] Thorne may argue the jurisdiction directly with the assigned arbitrator per the Rules and Meditation Procedures (Rule 6- Jurisdiction) pasted bellow [sic].

At 2:53 PM, Allston replied:

> Mr. Bonday,
>
> We requested fees from the employer based on the fact that your filing requirements were met. Additionally, we stated that per our rules, their objection was an issue for the arbitrator to decide once appointed. The employer is expected to support the dispute resolution process that it mandates in its dispute resolution plan. However, the employer continues to object and failed to pay the required fees. Therefore, the matter must be closed due to non-compliance by the employer.
>
> Absence [sic] a court order referring the matter back to arbitration, the matter will remain closed.

Bonday avoided the closure at 5:53 PM, emailing Allston and Thorne: "Must the employer pay the required fee; or may I submit full payment to advance the arbitration process forward?"

22-13546               TJOFLAT, J., Dissenting               21

On February 19, Allston emailed the parties that Bonday was allowed to advance the fees so that the arbitration could begin. The case would be handled by AAA's Pro Se Arbitration Administration Team, specifically "Pro Se Manager 3." But in a series of emails Thorne sent the Pro Se Manager on February 25, April 1, and July 7, Nalco maintained that AAA lacked jurisdiction and, for that reason, it would not be participating in the arbitration.[7]

---

[7] The February email summed up Nalco's position according to Thorne:

> Mr. Allston,
>
> I remind you again that Section 2.E of the Arbitration Agreement specifically provides that it "does not apply to disputes regarding the *enforceability*, revocability or validity of the Agreement or any portion of the Agreement. *Such disputes can only be resolved by a court of competent jurisdiction.*" AAA does not have jurisdiction over this matter unless a court of competent jurisdiction makes a decision on arbitrability. We therefore object to your repeated suggestions that Respondent has any obligation whatsoever to pay fees or otherwise agree to move forward before AAA. If he so chooses, Mr. Bonday can pursue this matter in a court of law. Simply put, your repeated insinuations that AAA has jurisdiction over this matter are both legally incorrect and misleading to Mr. Bonday. As such, we again respectfully request that the matter be dismissed.

Thorne's April 1 email read: "In case it was not entirely clear from our numerous previous communications, AAA does not have jurisdiction over this claim. Accordingly, Ecolab [Nalco] will not be responding further." And in a July 7 email, Thorne *did* respond further to state: "As we have repeatedly and clearly informed AAA and Mr. Bonday, AAA does not have jurisdiction over this claim. Accordingly, Ecolab [Nalco] will not be participating in an arbitration."

22                    TJOFLAT, J., Dissenting                    22-13546

Thorne's February 25 email to the Pro Se Manager repeated her email 4:35 PM message to Allston of January 26, again declaring that Section 2.E of the Arbitration Agreement barred arbitration of Bonday's Demand:

> Section 2.E of the Arbitration Agreement specifically provides that it *"does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Such disputes can only be resolved by a court of competent jurisdiction."* AAA does not have jurisdiction over this matter unless a court of competent jurisdiction makes a decision on arbitrability. We therefore object to your repeated suggestions that Respondent has any obligation whatsoever to pay fees or otherwise agree to move forward before AAA. If he so chooses, Mr. Bonday can pursue this matter in a court of law. Simply put, your repeated insinuations that AAA has jurisdiction over this matter are both legally incorrect and misleading to Mr. Bonday. As such, we again respectfully request that the matter be dismissed.

As shown *infra*, in every subsequent email to AAA, the Pro Se Manager, and the arbitrator—and in every pleading they filed in the lawsuit against Bonday in federal court—Nalco's lawyers contended that Section 2.E of the Arbitration Agreement barred the arbitrator from exercising jurisdiction over Bonday's Demand.

*Appointment of the Arbitrator and the Management Conference*

22-13546            TJOFLAT, J., Dissenting              23

The arbitration nevertheless proceeded without Nalco's involvement. AAA appointed an arbitrator on May 10.[8] On August 23, after seeking input from the parties as to their availability, AAA notified the parties that, pursuant to AAA Rule 8, the arbitrator would hold a "Management Conference" on August 27. AAA Rule 8 lists sixteen matters for the arbitrator and the parties to consider "without limitation" at the Conference. Among the matters are "i. the issues to be arbitrated" and "xiii. the specification of undisclosed claims." AAA's notice informed the parties that at the Case Management Conference, the arbitrator "will also address [Nalco's] objections to jurisdiction which will be treated by [the arbitrator] as a motion to dismiss."

AAA provided the parties with a "Management Conference Guide," a standardized form that identified some of the matters that would be considered during the Conference. They included the "Specification of Claims and Counterclaims" and dates for the "Initial Identification and Exchange of Witnesses," "Stipulations of Uncontested Facts (If Any)," the "Advanced Exchange of Identification of Exhibits and Witnesses," and the "Hearing on the Merits." The form provided spaces opposite each item for the entry of deadlines for the parties' performance.[9] As indicated *infra*, at some

---

[8] AAA appointed Cindy L. Anderson, an experienced employment lawyer, as the arbitrator. Anderson has served in various capacities as an arbitrator and mediator for AAA, as well as the Better Business Bureau, the National Association of Securities Dealers, and the Financial Industry Regulatory Authority.

[9] The parties were given until September 10 to initially identify witnesses, until September 17 to make Discovery Requests, until October 8 to respond to

point, perhaps in considering the matter of "undisclosed claims," the arbitrator identified an ERISA claim that has become the focus of this appeal.

The Arbitration Management Conference was held on August 27 as scheduled. Nalco did not appear. The arbitrator therefore considered Nalco's jurisdictional arguments as waived and denied its "motion to dismiss for lack of jurisdiction" with an entry to that effect on the "Management Conference Guide." The entry included this statement: "Case to proceed pursuant to Arbitration Agreement and AAA Employment Rules." The arbitrator then gave Nalco until September 10 to answer Bonday's Demand and to specify any counterclaims it wished to bring.

*Nalco Sues Bonday in Federal District Court*

On October 1, Nalco, now represented by attorney Valerie Hooker,[10] sued Bonday in District Court. *Nalco Co. LLC v. Laurence Bonday,* No. 2:21-cv-00727 (M.D. Fla. 2021). Invoking the Declaratory Judgment Act, 28 U.S.C. § 2201, Nalco asked the District Court to "enter an order declaring that the claims in the Demand are not

---

discovery, until October 10 to complete depositions, and until October 22 to complete discovery. November 3 was the deadline for the identification of witnesses and exhibits. Any mediation had to be completed by November 8. The hearing on the merits would take place on November 22, 2021, via Zoom.

[10] Hooker was a lawyer in the Jackson Lewis P.C. Miami, Florida, office. She filed the lawsuit for Nalco as a stand-in for Thorne, who was not admitted to practice law in Florida. Two and a half months later, the District Court granted an unopposed motion for Thorne to appear in the case pro hac vice.

22-13546          TJOFLAT, J., Dissenting          25

arbitrable under the Agreement and granting all such further and additional relief to Nalco as may be required, necessary or equitable." Bonday's Demand was not arbitrable, Nalco alleged, for three reasons. First, in the parties' Arbitration Agreement, the word

> "[d]ispute" does not include claims related to . . . controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies. The Ecolab Severance Plan that Defendant seeks to enforce falls under the category of an employee benefits plan under the Agreement and it provides an appeal procedure.[11]

Second,

> [w]hether the parties have submitted a dispute for arbitration is an exception to federal policy favoring arbitration agreements. "The question of whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002), (quoting *AT&T Technologies, Inc.*

---

[11] Section 2.E of the Arbitration Agreement states in pertinent part: "'Dispute' does not include claims related to . . . (iv) controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies. . . ."

*v. Comm'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (emphasis added)).

And third, "the Agreement specifically states that it 'does not apply to disputes regarding the *enforceability*, revocability or validity of the Agreement or any portion of the Agreement. *Such disputes can only be resolved by a court of competent jurisdiction.*'"

★          ★          ★

The first reason repeated practically verbatim what Thorne said to AAA in her January 19 letter (after receiving notice that Bonday had filed his Demand pursuant to the AAA Rules). The second reason accurately stated Supreme Court law but wrongly implied that the parties had not agreed to delegate to the arbitrator the power to decide questions of arbitrability. And the third reason, as already explained, was an utter non sequitur: there was no dispute whatsoever about the Agreement's enforceability, revocability, or validity.

★          ★          ★

Nalco's complaint sat idle for over a month. Then, on November 8, Nalco moved the arbitrator to stay the arbitration proceedings pending the District Court's ruling on Nalco's complaint for declaratory relief. Nalco's motion presented two reasons for the issuance of a stay. First, Bonday had "filed an Employment Arbitration Rules Demand for Arbitration . . . , alleging that Nalco had failed to follow the Ecolab Severance Plan . . . when Nalco denied his request for severance benefits," and the Demand was not arbitrable because Bonday could "appeal" the denial of his request to

22-13546          TJOFLAT, J., Dissenting          27

"the Plan Administrator." And second, the Arbitration Agreement "does not apply to disputes regarding the *enforceability*, revocability or validity of the Agreement or any portion of the Agreement. *Such disputes can only be resolved by a court of competent jurisdiction.*"

The next day, November 9, Nalco, through Hooker, moved the District Court for a temporary restraining order ("TRO") or preliminary injunction restraining Bonday from proceeding further in the ongoing arbitration. On November 12, the District Court, acting sua sponte, dismissed Nalco's complaint without prejudice for failure to allege a basis for the Court's subject-matter jurisdiction.[12] In the same order, it denied Nalco's request for injunctive relief.

Nalco requested a preliminary injunction because, "[i]n the absence of the requested injunction, the arbitrator would move forward with the evidentiary hearing set on November 22, 2021." Nalco said it "would be forced to expend time and resources arbitrating a claim arising out of the Plan, which is expressly excluded from the Agreement," and it "would also be forced to pay the

_____

[12] Nalco's complaint attempted to invoke the District Court's subject-matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The complaint merely alleged, in conclusory fashion, that the "Court ha[d] jurisdiction over the claims . . . and [wa]s authorized to order declaratory relief." But the Declaratory Judgment Act provides a *remedy*, not a basis for federal district court jurisdiction. *See* 28 U.S.C. § 2201 (empowering a federal court to grant declaratory relief "[i]n a case of actual controversy within its jurisdiction").

28                        TJOFLAT, J., Dissenting                    22-13546

arbitrator's fee of at least $2,400." Nalco argued that it would suffer irreparable harm as a result.

The District Court's order denying injunctive relief drew on our decision in *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (2004), since the procedural scenario it faced was materially identical to the one we faced in *Klay*. There, a class of physicians sued a group of health maintenance organizations, and the defendants promptly moved the district court to compel arbitration of the plaintiffs' claims. *Klay*, 376 F.3d at 1095. In the process, the district court held that certain claims were arbitrable and others were not. *Id.* When two of the defendants initiated arbitration, the plaintiffs dismissed all of the arbitrable claims and sought an injunction preventing further arbitration of *any* claims, arbitrable or otherwise. *Id.* The district court agreed, and it issued two injunctions pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *Id.* at 1095–96.

We reversed. As to the nonarbitrable claims, we noted that the district court had misapplied the traditional criteria for granting an injunction. *Id.* at 1111–12. In particular, we "note[d] that the district court's conclusion regarding irreparable injury was patently wrong." *Id.* at 1112 n.20. We explained:

> Even if the defendants were permitted to proceed with arbitrating nonarbitrable claims, it is unclear how the plaintiffs would suffer any injury at all, much less irreparable injury. The plaintiffs would not have to participate in the defendants' arbitration proceedings. Even if the defendants obtained a default verdict against them, they would be unable to have it

22-13546               TJOFLAT, J., Dissenting                    29

> enforced in a district court because a district court is empowered to vacate arbitral awards where the "arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it. Consequently, while the defendant is free to initiate whatever private arbitration proceedings he wishes, a plaintiff need not be troubled by them because they are essentially legal nullities from the start.

*Id.*

Like we did in *Klay*, the District Court here refused to issue a preliminary injunction because

> Nalco would have an adequate remedy at law for any arbitration award that may be entered against it if the claims were in fact outside the scope of the Arbitration Agreement. Namely, "under those circumstances, a district court could vacate the arbitration award (or refuse to enforce it) based on the arbitrators' manifest disregard of the law." *See Klay*, 376 F.3d at 1108–1109 (internal quotation marks omitted).

⋆               ⋆               ⋆

The standard by which we review motions to vacate pursuant to 9 U.S.C. § 10(a)(4) have changed somewhat since we decided *Klay*. In *Hall Street*, the Supreme Court held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." 552 U.S. at 584, 128 S. Ct. at 1403. Since then, we have held "that our judicially-created bases for vacatur [including 'manifest disregard of the law'] are no longer valid in light of

Hall Street." *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1324 (11th Cir. 2010). And in *Sutter*, the Supreme Court stated that, in deciding whether to grant a § 10(a)(4) motion, "the sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." 569 U.S. at 569, 133 S. Ct. at 2068. Nalco seemingly did not bring our *Klay* decision to the District Court's attention, forcing the Court to find it of its own initiative. That is how the Court realized, contrary to Nalco's motion, that there exists no cause of action for "wrongful arbitration." *See Klay*, 376 F.3d at 1098, 1112.

⋆          ⋆          ⋆

The District Court also dismissed Nalco's complaint for its failure to invoke the Court's subject-matter jurisdiction. It dismissed the complaint without prejudice to allow Nalco a chance to cure the defect. On November 16, Nalco, still represented by attorney Hooker, filed an amended complaint alleging subject-matter jurisdiction under 28 U.S.C. § 1331 based on Bonday's claim for relief under ERISA. The amended complaint sought the same declaratory relief as the original, alleging that Bonday's Demand was not arbitrable for the two reasons stated in the complaint.

On November 19, Bonday, representing himself, filed an answer using the District Court's Pro Se form. The answer recited the facts supporting Bonday's Demand, denied the amended complaint's material allegations, and asserted Nalco's failure to state a claim for relief as a defense. The case was then put on litigation

22-13546          TJOFLAT, J., Dissenting          31

management, and the parties scheduled a Rule 16 pretrial conference for January 27, 2022.

*The Arbitration Continues*

In an order dated November 23, 2021, the arbitrator observed that Nalco had been treating Bonday's Demand as presenting only one claim, a breach of the parties' Severance Agreement, and that Nalco had been ignoring the possibility that the Demand presented other claims. She noted that Bonday had stated "repeatedly" that he "was not treated the same as other similarly situated employees who were given the requested [severance] benefits" and that he "may be raising" claims that the "disparate treatment" violated ERISA[13] and amounted to "age discrimination under state or federal law."[14] Since the parties' Arbitration Agreement would not "foreclose the arbitration of" such claims, the arbitrator stated in her November 23 order that "this process will continue." She

---

[13] Section 510 of ERISA makes it "unlawful for any person to . . . discriminate against a . . . beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Section 502 permits civil actions to be brought "by a participant, beneficiary, or fiduciary" for injunctive or "other appropriate equitable relief." *Id.* § 1132(a)(3).

[14] Specifically, the Demand alleged that Bonday had served in a "Global Director" role for Nalco, but the company later attempted to demote him to the role of "Industry Technical Consultant." He requested a severance package, but Nalco told him that he was not eligible. However, Bonday discovered that Nalco had offered severance packages to *other* Directors who had been demoted to technical roles. This "discrepancy" led Bonday to believe that Nalco had ulterior motives for denying him a severance package.

accordingly denied Nalco's November 8 motion to stay the arbitration.

⋆          ⋆          ⋆

In identifying a potential ERISA claim in the factual statements of Bonday's Demand, the arbitrator interpreted and applied the parties' Arbitration Agreement, especially the AAA Rules incorporated therein. Specifically, Rule 6 empowered her to rule on the "scope . . . of the arbitration agreement," which includes the types of disputes the Agreement covered. And Rule 8 mandated that the matters considered at the Arbitration Management Conference "shall include, without limitation" topics such as "the specification of undisclosed claims." This requirement is also reflected in the AAA Management Conference Guide, which provides deadlines for the "Specification of Claims and Counterclaims."

In contrast, Nalco never cited any AAA Rules. Nalco's position was—and still is—that the arbitrator could not have identified an ERISA claim from Bonday's Demand, in spite of the fact that the AAA Rules charged her with the duty, under Rule 8, of identifying "the issues to be arbitrated" and "the specification of undisclosed claims." Nalco effectively insists that the arbitrator should be held to the same standards as a federal district court construing a plaintiff's complaint. And Nalco does so without having attended the Management Conference itself.

⋆          ⋆          ⋆

In a last-ditch effort to halt the arbitration proceedings, Thorne wrote Pro Se Manager 6 on November 24 about the

22-13546                TJOFLAT, J., Dissenting                33

arbitrator's November 23 order. Thorne accused the arbitrator of "manifest disregard for the law," denied that the claims she identified in her November 23 order were arbitrable, and again requested that AAA stay the arbitration pending the outcome of Nalco's case in District Court. On November 29, Pro Se Manager 6 informed Thorne and Bonday that the arbitrator would not entertain Nalco's request for a stay and that the hearing on Bonday's Demand would occur as newly scheduled on December 7.

Nalco did not attend. At the hearing, two witnesses testified that they, like Bonday, had worked at the "Director level" and had been demoted to technical positions. Nalco offered them the option of taking their severance and leaving the company. But it refused to make the same offer to Bonday. The arbitrator concluded that this unrebutted evidence was sufficient to prove an ERISA claim.

⋆            ⋆            ⋆

Nalco's litigation strategy apparently called for the company to continue boycotting the AAA arbitration proceedings, perhaps in the hope of avoiding *Sutter*'s heavy burden. Instead, Nalco focused on its declaratory judgment action. The case's litigation track called for reciprocal discovery—which might have involved Nalco's lawyers deposing the arbitrator and the AAA administrative personnel Thorne had emailed—the disclosure of expert witnesses, and the preliminary and final pretrial conferences the District Court would hold in accordance with Rule 16 of the Federal Rules of Civil Procedure.

The Uniform Case Management Report Hooker and Bonday presented to the Court on December 29 called for a two-day bench trial in June 2023. In all likelihood, Nalco would have tried to call the arbitrator as an adverse witness, subjecting her to leading questions on direct examination. Nalco's lawyer's might have hoped to accuse her of manifest disregard for the law and unethical conduct in construing Bonday's Demand. Nalco would try and make the experience as unpleasant as possible for everyone involved.

Although the District Court's November 12 order informed Nalco's lawyers that, under *Klay*, the company was not entitled to injunctive relief because it had an adequate remedy at law in the form of a §10(a)(4) motion to vacate the arbitrator's final award, that would prove to be no problem. The District Court's verdict following the trial on the claims in Nalco's amended complaint would carry the day. As it turned out, a trial was not necessary. The lawyers got the relief Nalco asked for when the Court granted the motion for summary judgment the lawyers filed on December 17, 2021.

⋆          ⋆          ⋆

On December 17, Nalco moved the District Court for summary judgment and requested declaratory relief—a judgment declaring that the claim in Bonday's Demand was not arbitrable on two grounds. First, the Demand described a dispute that "is related to" an "employee benefits plan with an appeal procedure." And second, the Arbitration Agreement "states that it 'does not apply to

disputes regarding the *enforceability*, revocability or validity of the Agreement or any portion of the Agreement. *Such disputes can only be resolved by a court of competent jurisdiction.'"*

On December 29, the parties filed a Uniform Case Management Report in the District Court. The report, signed by Bonday, Thorne, and Hooker, indicated that the parties had held a Federal Rule of Civil Procedure 26(f) planning conference on December 20.[15]

On December 31, while the motion was pending, the arbitrator issued the "Final Award of the Arbitrator." The award disposed of three claims the arbitrator identified in her November 23 order:

> [1] age discrimination in violation of the federal Age Discrimination in Employment Act, [2] breach of contract, and [3] violation of the federal Employee Retirement Income and Security Act ("ERISA"), all arising out of Respondent's refusal to give Claimant the option of accepting Respondent's severance plan ("the Plan") after his job was eliminated and he was placed in a demoted position.

---

[15] Federal Rule of Civil Procedure 26(f) provides, in relevant part, that "parties must confer as soon as practicable" to "consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan."

The arbitrator denied the first claim because Bonday was unable to prove that Nalco "treated [him] differently due to his protected status—in this case, his age." She denied the second claim on the basis that she lacked jurisdiction because Bonday "failed to pursue his claims under the Plan pursuant to the appeal process required therein." The arbitrator granted Bonday's third claim under ERISA because "[Nalco] discriminated against [Bonday] for the purpose of interfering with his attainment of rights under the Plan to which he would have been entitled" and awarded him equitable relief in the sum of $122,870.[16] The Award mandated that Nalco pay Bonday that sum no later than January 31, 2022.

*Nalco Challenges the Final Award in the District Court*

On January 25, 2022, while its motion for summary judgment was still pending in the District Court, Nalco moved the Court to vacate the Final Award pursuant to Section 10 of the FAA, 9 U.S.C. § 10.[17] The motion alleged that the Final Award should be vacated because "in manifest disregard for the law," the arbitrator "refused [to] stay the arbitration pending resolution of this [action], decided arbitrability (even though that issue was reserved for the

---

[16] In addition, the arbitrator awarded Bonday administrative fees of $2,950, the arbitrator's compensation of $3,262.50, and costs of $383.

[17] Such motions are filed in accordance with the provisions of 9 U.S.C. § 6. As the Supreme Court has explained, an application for § 10 relief "will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." *Hall St.*, 552 U.S. at 582, 128 S. Ct. at 1402.

22-13546                TJOFLAT, J., Dissenting                37

Court), and proceeded with the arbitration before this Court made the decision on arbitrability" in violation of Section 10 of the FAA.

Nalco urged the District Court to find that the Arbitration Agreement reserved for the Court the authority to determine the arbitrability of the parties' disputes because (1) the Agreement did not "clear[ly] and unmistakabl[y]" evidence that the parties' delegated such authority to the arbitrator, *First Options,* 514 U.S. at 944, 115 S. Ct. at 1924, and (2) Section 2.E of the Arbitration Agreement "specifically provides that it 'does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement. *Such disputes can only be resolved by a court of competent jurisdiction.*'"

In the event the Court found the dispute in Bonday's Demand arbitrable, Nalco asked it to bear this in mind: the arbitrator "created, raised, and dismissed [Bonday's] ADEA and 'breach of contact' claims, but refused to dismiss her perceived ERISA Section 510 claim." "Even if legally correct, [the arbitrator's] decisions were irreversibly tainted by her lack of authority to make them."

> Indeed, under these circumstances, all of the decisions by AAA and the arbitrator (to appoint an arbitrator without Nalco's consent, to refuse to dismiss the matter, to refuse to stay the matter, to decide arbitrability, and to proceed with the arbitration) are contaminated by their refusal to recognize this Court's jurisdiction to decide arbitrability. Accordingly, if this Court in its independent judgment determines that any claims in Bonday's demand are

arbitrable, Nalco is entitled to a new arbitration pro-
ceeding, including appointment of a new arbitrator
to which it agrees.

★            ★            ★

Nalco's motion to vacate is based on three theories, each
purportedly warranting the vacatur of the Final Award. None has
merit. I take them up in order.

*Manifest disregard for the law*. The arbitrator's conduct—in de-
ciding that the parties' dispute was arbitrable and then resolving
the dispute instead of staying the arbitration to enable the District
Court to decide whether the dispute was arbitrable—constituted
"manifest disregard for the law." Nalco supports its manifest disre-
gard for the law theory with citations to cases including *Montes v.
Shearson Lehman Bros.*, 128 F.3d 1456 (11th Cir. 1997), where this
Court recognized "three non-statutory reasons for vacating arbitra-
tion decisions." 128 F.3d at 1459 n.5. Nalco claimed that "[a]n award
may be vacated if it is (1) arbitrary and capricious; (2) if the enforce-
ment of the award is contrary to public policy; or (3) if the award
was made in manifest disregard of the law."

The problem with this theory is that it is no longer viable. In
*Gheradi v. Citigroup Markets Inc.*, we recognized that with this state-
ment:

> Like several of our sister circuits, we previously rec-
> ognized a variety of non-statutory grounds for vaca-
> tur, including "manifest disregard of the law." *Scott v.
> Prudential Sec., Inc.*, 141 F.3d 1007, 1017 (11th Cir.

1998); *see Montes v. Shearson Lehman Bros.*, 128 F.3d 1456, 1461 (11th Cir. 1997). But based on the Supreme Court's decision in *Hall Street*, we have since held that these judicially-created grounds violate the FAA. *See Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010) (applying *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586, 128 S. Ct. 1396, 170 L.Ed.2d 254 (2008)).

975 F.3d 1232, 1236 n.3 (11th Cir. 2020).

*The decision on arbitrability*. Nalco claimed it was reserved for the Court. It said that the Arbitration Agreement does not "clear[ly] and unmistakabl[y]" evidence that the parties delegated to the arbitrator the authority to decide the arbitrability of a dispute, citing *First Options*, 514 U.S. at 944, 115 S. Ct. at 1994. The problem with this theory is that *Terminix International Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327 (11th Cir. 2005), forecloses it. There, the parties' arbitration agreement incorporated the AAA Commercial Arbitration Rules in the same way the parties incorporated the AAA Employment Arbitration Rules here. Rule 8 in *Terminix*—much like Rule 6 here—provided that

> "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.

*Id*. at 1332 (citations omitted).

40                    TJOFLAT, J., Dissenting                    22-13546

*Disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement*. Bonday did not challenge the enforceability, revocability, or validity of the Agreement. He sought its enforcement. So did Nalco, who wanted the District Court to interpret the Agreement to find that it did not apply to Bonday's Demand. In other words, there was simply no dispute here that could possibly have been implicated by the provision Nalco repeatedly cited.

In sum, Nalco's theories in support of vacatur were erroneous. Instead of its theories, Nalco's motion should have focused on the question the District Court had to decide: "whether the arbitrator (even arguably) interpreted the parties' contract, not whether [s]he got its meaning right or wrong." *Sutter*, 569 U.S. at 569, 133 S. Ct. at 2069.

⋆          ⋆          ⋆

On January 31, Bonday filed a document in opposition to Nalco's motion to vacate. He questioned Nalco's right to obtain a vacatur of the arbitrator's award given Nalco's repeated failures to participate in the arbitration. Nalco responded to Bonday's opposition on February 15 with a "Reply in Support of its Motion to Vacate Arbitration Award." The reply repeated what Nalco stated in its motion to vacate and addressed the merits of the ERISA claim the arbitrator had identified in the factual allegations of Bonday's Demand. The ERISA claim failed, the reply stated, because Bonday had not shown that "an *adverse* employment action was taken with the *specific intent* to deprive [him] of plan benefits."

22-13546        TJOFLAT, J., Dissenting        41

On May 27, 2022, while its motions to vacate and for summary judgment were pending in the District Court, Nalco, having obtained leave of the Court, filed a second amended complaint. Like the first amended complaint, it sought "pursuant to 28 U.S.C. § 2201 . . . a declaratory judgment that Nalco is not required to, and Defendant has no right to, arbitrate the claims in the Demand."[18]

On June 3, Bonday, still proceeding pro se, filed a motion to dismiss the second amended complaint. Reduced to its essentials, the motion urged the District Court to uphold the arbitrator's decision on the three claims set out in her order of November 23, 2021, and to reject Nalco's argument that the arbitrator lacked jurisdiction to arbitrate the Demand. Nalco filed an opposition to the motion to dismiss on June 24. Nalco adhered to the two points it had been making throughout: (1) the arbitrator lacked jurisdiction to arbitrate the Demand because the severance pay claim it asserted did not present an arbitrable dispute, and (2) the Agreement "does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Such disputes can only be resolved by a court of competent jurisdiction."

*The District Court's Dispositions*

On September 22, 2022, the District Court issued a twenty-three page order granting Nalco's motion to vacate the arbitrator's

---

[18] The second amended complaint again sought the same declaratory relief as the original, alleging that Bonday's Demand was not arbitrable for the two reasons stated therein.

42                    TJOFLAT, J., Dissenting                    22-13546

award.[19] The Court granted the motion without a hearing, relying on a cold record: the AAA documents relating to the arbitration, the pleadings filed with the District Court in the declaratory judgment action, and Nalco's motion to vacate.[20]

The District Court addressed the arguments Nalco made in its motion. Then on its own initiative and without notice to the parties, the Court addressed issues the parties did not present.

Turning to Nalco's motion to vacate, recall that Nalco's first theory was that the award should be vacated because the

---

[19] In the same order, the Court denied Bonday's motion to dismiss.

[20] The Court expressed that the record was sufficient for it to rule dispositively on Nalco's motions without an evidentiary hearing in this statement:

> The Court finds that there is sufficient evidence before it to address the grounds in Nalco's motion to vacate. *Cf. Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 542–43 (5th Cir. 1987) (affirming district court's resolution of motion to vacate arbitration award "on the record submitted by the parties"). Thus, the Court need not conduct an evidentiary hearing and may resolve Nalco's motion to vacate on the evidence before it. *See O.R. Sec., Inc. v. Pro. Plan. Assocs., Inc.*, 857 F.2d 742, 746 n.3 (11th Cir. 1988). The Court is also . . . mindful that it must liberally construe Mr. Bonday's filings given his pro se status. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Last, the Court's analysis turns solely on questions of law and there are no factual determinations to be made based on disputed evidence precluding summary judgment. *Cf. Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) ("[W]here a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate.").

22-13546                TJOFLAT, J., Dissenting                43

arbitrator's conduct in handling the arbitration evidenced a manifest disregard for the law in violation Section 10 of the FAA, 9 U.S.C. § 10. Nalco's second and third theories were that the Arbitration Agreement did not "clearly and unmistakably" evidence that the parties delegated to the arbitrator the authority to decide the arbitrability of disputes and therefore reserved all arbitrability determinations for the court[21]; and that the Arbitration Agreement, in Section 2.E, "specifically provides that [the Agreement] 'does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Such disputes can only be resolved by a court of competent jurisdiction.'"

The District Court disregarded the first theory as inapplicable with this statement:

> Nalco incorrectly asserts that "[a]n award may be vacated if it is (1) arbitrary and capricious; (2) if the enforcement of the award is contrary to public policy; or (3) if the award was made in manifest disregard for the law." . . . While several judicially-created bases for vacatur had developed in this circuit over the past few decades, . . . such grounds are no longer valid in light of the Supreme Court's decision in *Hall St.* Thus, the grounds for vacatur listed in § 10(a) are exclusive." *Johnson* [*v. Directory Assistants Inc.*], 797 F.3d [1294,] 1299 (citing *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010)).

---

[21] Nalco based this theory on the decision in *First Options*, 514 U.S. at 944, 115 S. Ct. at 1924.

The District Court found merit in the second theory: "The plain and ordinary reading of the Arbitration Agreement . . . readily shows that the parties did not intend to arbitrate arbitrability." "The parties also limited the arbitrator's authority 'to the resolution of Disputes between the parties,' not the resolution and determination of what constitutes Disputes." In the Court's view, Nalco's actions constituted evidence that the parties did not intend that the arbitrator make that determination:

> Nalco's actions cannot support an inference that it agreed to have the arbitrator to [sic] decide the question of arbitrability. "To the contrary, insofar as [Nalco] [was] forcefully objecting to the arbitrator[] deciding [its] dispute with [Mr. Bonday], one naturally would think that they did <u>not</u> want the arbitrator[] to have binding authority over [it]." *First Options of Chicago, Inc.,* 514 U.S. at 946 (emphasis in original).

The District Court then expressed its conclusion about who should decide whether a dispute is arbitrable, the arbitrator or a court:

> Based on careful review of the entire record, the Court finds that the parties did not delegate the question of arbitrability (i.e., whether Mr. Bonday's Demand was arbitrable in the first instance) to the arbitrator. At the very least, there is no clear and unmistakable evidence of that delegation.

In other words, because the parties' Agreement did not clearly and unmistakably delegate to the arbitrator the authority to determine the arbitrability of their disputes, the Court would

review the arbitrator's determinations as to Bonday's Demand "de novo." The Court cited *Sutter*'s second footnote, which reads, in relevant part:

> Those questions [of arbitrability]—which "include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy"—are presumptively for courts to decide. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion). A court may therefore review an arbitrator's determination of such a matter *de novo* absent "clear[ ] and unmistakabl[e]" evidence that the parties wanted an arbitrator to resolve the dispute. *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

*Sutter*, 569 U.S. at 569, 133 S. Ct. at 2068 n.2.

The District Court bypassed Nalco's third theory. The theory was plainly inapplicable because Bonday's Demand did not challenge the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

After addressing the theories Nalco presented in support of its motion for vacatur, the District Court silently assumed that the arbitrator had the authority to arbitrate Bonday's Demand and turned to the questions of whether the Demand presented an arbitrable dispute and, assuming that it did, whether the dispute included the ERISA claim the arbitrator discerned. The Court found that the Demand was not arbitrable:

Mr. Bonday's Demand—specifically, the grievance giving rise to the Demand—was nonarbitrable. The Arbitration Agreement expressly states that "Dispute[s] do[] not include claims related to . . . controversies over awards of benefits or incentives under [Nalco's] . . . employee benefits plans . . . that contain an appeal procedure." (Doc. 36-3 at ¶ 2.E.) Mr. Bonday submitted his Demand because Nalco did not follow the Severance Plan and he requested "36 weeks salary per the [Severance Plan]." And the Severance Plan, which governs Mr. Bonday's entitlement to an award of employee benefits in the form of severance pay, unquestionably contains an appeal procedure. (Doc. 36-2 at 9.) For these reasons, Mr. Bonday's Demand was not a "Dispute," as that term is defined in the Arbitration Agreement, and therefore was not subject to arbitration.

Assuming the dispute was arbitrable, the Court found that it did not include the ERISA claim. The Court prefaced its finding with these statements:

> [T]he "language of arbitration demands should not be subjected to the same strict standards of construction that would be applied in formal court proceedings." *Kurt Orban Co. v. Angeles Metal Sys.*, 573 F.2d 739, 740 (2d Cir. 1978). Indeed, "[f]ederal law . . . does not impose any requirements as to how specific a notice of arbitration must be." *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993). Be that as it may, once again, the "law is well-established that an arbitrator can bind the parties only on issues that they

> have agreed to submit to [arbitration]," and an arbitrator exceeds her power under section 10(a)(4) by deciding issues not submitted to her. *Davis*, 59 F.3d at 1194–95 (quotation omitted).

The Court therefore found

> that Mr. Bonday did not submit a Demand for the arbitration of any ERISA discrimination claim. *See Davis*, 59 F.3d at 1195 (holding that the issue of attorneys' fees was not submitted for arbitration, in part because a request for such fees was never made). And Mr. Bonday's *pro se* status during arbitration notwithstanding, "the mere fact that the [arbitrator] was aware of a statute that provides for an award of [equitable damages under ERISA] does not constitute a submission of the issue by the parties for determination." *Id.*

Finally, after addressing Nalco's grounds for vacatur, the Court assumed that Bonday's Demand submitted a claim for discrimination under ERISA, as the arbitrator construed the Demand, and concluded that the result would be no different. The "claim is inextricably intertwined with the Severance Plan, which is not a 'Dispute' subject to arbitration because . . . it includes an appeals process."

★        ★        ★

Several matters of importance are missing from the District Court's review of the Final Award. The parties' Arbitration Agreement provides for the arbitration of disputes pursuant to the FAA

and the AAA Rules. The Court's September 22 order acknowledges that but contains no mention at all of the relevant AAA Rules. None of the rules are mentioned because Nalco's motion to vacate is silent regarding the rules. These proceedings cast doubt on Nalco's lawyers' knowledge about arbitrating disputes pursuant to AAA's arbitration rules.

### III.  Correcting the Courts' Missteps

In granting Nalco's motion to vacate the arbitration award, the District Court failed in its duty to identify and apply the proper standard of review articulated in *Sutter*. If it had, it would have considered the AAA Rules and asked whether the arbitrator had *even arguably* interpreted them. The District Court would have quickly realized that the arbitrator did exactly what she was hired to do: she consulted the AAA Rules and the parties' contract, and she explicitly interpreted them throughout the arbitration proceeding. That should have resolved the case, and the District Court should have denied Nalco's attempt at vacatur. On appeal, the Majority simply repeats the District Court's errors.

The most fundamental flaw in the District Court's order is the Court's failure to identify—much less apply—the appropriate standard of review on a 9 U.S.C. § 10(a)(4) motion. Under *Sutter*, the "sole question" before the Court was "whether the arbitrator (even arguably) interpreted the parties' contract, not whether [s]he got its meaning right or wrong." *Sutter*, 569 U.S. at 569, 133 S. Ct. at 2068. To answer that question, the Court was required to consider more than just two provisions in the parties' Agreement—it

was required to consider the AAA Rules incorporated therein. Had the Court done so, this would have been an easy case. The Court would have realized that the arbitrator faithfully performed her role, and Nalco's motion to vacate would have been denied.

The analysis might have proceeded as follows: The parties' Agreement calls for all "Disputes" to "be finally and conclusively resolved by final and binding arbitration before a neutral third party." In this case, the "neutral third party" is an arbitrator for the American Arbitration Association. Indeed, the Agreement provides that arbitration "will be conducted in accordance with the AAA Employment Arbitration Rules."

Naturally, the Court consults the AAA Rules and discovers several relevant provisions. AAA Rule 48 makes clear that "[t]he arbitrator shall interpret and apply these rules as the relate to the arbitrator's powers and duties." AAA Rule 4 dictates how parties may initiate arbitration. The District Court notices that Bonday filed his Demand in compliance with the rule and that Nalco did not answer. Still, Nalco's "[f]ailure to file an answering statement shall not operate to delay the arbitration," so it was proper for the arbitration to proceed. AAA Rule 5 explains, in broad terms, whether and how parties may change their claims before or after the appointment of an arbitrator. It explains that "[a]fter the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator." So even if the Court believes that the arbitrator granted Bonday relief

on "a new or different claim," it realizes that this relief was within the arbitrator's discretion.

Next, AAA Rule 6 provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope or validity of the arbitration agreement." The Court cross-references this provision with the one cited by Nalco, Section 2.E of the parties' Agreement. Section 2.E only addresses "disputes regarding the enforceability, revocability or validity of the Agreement." The Court realizes that this disclaimer says nothing of the Agreement's "scope," so Nalco's argument is baseless. The Court concludes that the question of scope—what the parties refer to as *arbitrability*—was properly before the arbitrator. And that becomes especially clear when the Court consults *Terminix* and *Attix*, discussed below.

Then, all that is left is for the Court to determine whether the arbitrator *could arguably* construe Bonday's Demand to include the ERISA claim. Multiple AAA Rules bear on this question. AAA Rule 8 describes the Arbitration Management Conference, during which the arbitrator must consider sixteen matters. Among them are "i. the issues to be arbitrated" and "xiii. the specification of undisclosed claims." The Court acknowledges that a conference was held and that Nalco did not attend. Still, Nalco's absence did not prevent the arbitrator from either construing Bonday's Demand to contain the ERISA claim or permitting Bonday to specify it as an undisclosed claim.

Either way, the Court sees that the arbitrator at least arguably complied with the AAA Rules—and therefore the parties' contract—and so it denies Nalco's motion to vacate under § 10(a)(4). Unfortunately, the District Court's failure to follow this process, explained time and again by our Court and the Supreme Court, has twisted this case beyond recognition. And worse, the Majority now repeats the District Court's error.

Essential to any arbitration agreement are the choices of *who* will arbitrate and *how* they will do so. *See Stolt-Nielsen*, 559 U.S. at 683–84, 130 S. Ct. at 1774. These choices must be respected just as we would respect any other contract provisions between consenting parties. Implicit in these choices is the understanding that arbitrators themselves will know best how to interpret their association's rules. *See Howsam*, 537 U.S. at 85, 123 S. Ct. at 593 ("[A]rbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it. In the absence of any statement to the contrary in the arbitration agreement, it is reasonable to infer that the parties intended the agreement to reflect that understanding."). Indeed, AAA Rule 48 explicitly provides that "[t]he arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties."

The AAA Rules establish procedures that are foreign to our own Federal Rules of Civil Procedure, but they are the rules that the parties have contracted to use, and the FAA mandates that we treat them accordingly. Notably, the Majority does not engage

52                      TJOFLAT, J., Dissenting                    22-13546

with these rules at all. Rather, it explicitly invites comparisons to how *courts* conduct their business.

For instance, the Majority analyzes this pro se *arbitration* as if it were a pro se *litigation* taking place in court. True, as the Majority notes, "the 'leniency' provided to pro se litigants 'does not give a *court* license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading.'" Maj. Op. at 10 (quoting *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014)) (emphasis added). But arbitration is not a court proceeding, and an arbitrator is not a judge.

If an arbitrator oversteps and demonstrates "evident partiality," we may vacate an award on that basis. 9 U.S.C. § 10(a)(2). Otherwise, we have no grounds to interfere. Perhaps Bonday's pro se status affected how the arbitrator parsed his Demand, but nothing in the AAA Rules forbids that. And I am not convinced that the arbitrator would have erred even if Bonday had been represented by counsel.

AAA Rule 4 dictates how parties may initiate arbitration. Where, as here, a party requests arbitration unilaterally, Rule 4(b)(i)(1) requires that the party file a written notice in the form of a Demand. The same rule provides that the Demand should contain, among other things, "a brief statement of the nature of the dispute; the amount in controversy, if any; [and] the remedy sought." Nothing in the rule's text suggests that a claimant must go issue by issue, separating the claims for relief into different counts and citing applicable law.

22-13546               Tjoflat, J., Dissenting               53

Unsurprisingly given the informal nature of arbitration, AAA's notice requirements appear even less demanding than the "short and plain statement" required by our equivalent Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a)(2) (requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). AAA Rule 4 requires a statement of the *nature of the dispute*; it does not require that the claimant puts forth any particular legal theories.

The Majority nevertheless insists that, at some point during arbitration, Bonday had to affirmatively declare his intent to pursue the very claims that had already been identified by the arbitrator. Maj. Op. at 9. As support for that proposition, the Majority does not cite any provision of the AAA Rules. Instead, it places undue reliance on one of our earlier cases, *Davis v. Prudential Securities, Inc.*, 59 F.3d 1186 (11th Cir. 1995).

### IV.  Distinguishing *Davis*

In an effort to avoid *Sutter*, and in violation of the party presentation principle, both the District Court and the Majority rely on *Davis*, a case that neither party cited in the District Court or on appeal. That case, which we decided in 1995, pre-dates many of our Court's and the Supreme Court's later cases refining the appropriate standard of review on a § 10(a)(4) motion, including *Sutter*. But even if we assumed, for the sake of argument, that some of *Davis* is still good law, the District Court and Majority were wrong

to apply it under these circumstances, which so significantly differ from the facts of that case.

In *Davis,* the arbitration panel, applying the AAA Security Arbitration Rules, issued an award giving the claimant, Davis, compensatory and punitive damages and ruling that "each party was to bear its own attorneys' fees.' *Id.* at 1187. The district court confirmed the award, and the respondent appealed the punitive damages issue. Davis cross-appealed the attorneys' fees issue, "contend[ing] that the district court erred in refusing to modify, vacate or correct the arbitrators' award to the extent that it denied Davis his attorneys' fees." *Id.* at 1194. Davis argued that the arbitration panel erred in ruling on the attorneys' fees issue because he had not submitted a claim for attorneys' fees in his demand for arbitration.

In considering Davis's argument, we noted that the FAA provided for the vacation of an award under 9 U.S.C. § 10(a)(4) "[w]here the arbitrators exceeded their powers" and for the modification or correction of an award under 9 U.S.C. § 11(b) "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." *Id.* We held "that the arbitrators' decision on attorneys' fees exceeded the scope of their powers and that the district court erred in confirming that portion of the award." *Id.* at 1196.

The Majority reads *Davis* as setting aside the attorneys' fees portion of the arbitration award on the ground that the arbitrators exceeded their powers in violation of § 10(a)(4) in using the award

to resolve the attorneys' fees issue. But the *Davis* Court lacked the authority to grant partial relief under § 10(a)(4) because § 10(a)(4) only authorized the district court, and thus this Court on appeal, to vacate the *entire* arbitral award, not just a portion of the award. *See NCR Corp. v. Sac-Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995) ("Vacating an award 'in-part' . . . is synonymous with modifying an award and is, therefore, governed by § 11."). The arbitration panel violated § 11(b) because, in the language of that provision, the panel "awarded upon a matter not submitted" to it. *See* 9 U.S.C. § 11(b).

Furthermore, the facts of *Davis* bear little resemblance to this case. At no point in the arbitration did Davis indicate that he was seeking attorneys' fees, and neither party presented any evidence or argument on that issue. 59 F.3d at 1187. Nevertheless, the final award purported that "each party [was] to bear all of its own additional cost [sic] and attorneys' fees." *Id.* (alterations in original).

On appeal, the claimant *himself* argued that he never submitted such a claim for arbitration. *Id.* at 1194. A close review of the case explains why: then-existing Florida law allowed attorneys' fees to be granted only by trial courts in award-confirmation proceedings. *Id.* at 1194 n.10. We agreed that Davis never submitted the issue and vacated the relevant part of the district court's judgment confirming the final award. *Id.* at 1195.

The Majority misreads *Davis* by isolating half of one sentence contained therein. The *Davis* Court noted that Davis's demand "ma[de] no request for attorneys' fees, *and neither party*

*presented evidence or argument on the issue.*" *Id.* (emphasis added). In that case, the only possible basis for the arbitrators' decision was that they were made "aware of a statute that provides for an award of attorneys' fees." *Id.* And *Davis* held that was plainly insufficient to consider the issue "submitted." *Id.*

Citing *Davis*, the Majority nevertheless holds that the arbitrator exceeded her powers here by entertaining and deciding "an 'issue [that] was not submitted to' her for determination." Maj. Op. at 8 (alteration in original) (quoting *Davis*, 59 F.3d at 1195). That Bonday "eventually raised the ERISA claim with the arbitrator during the arbitration proceedings, after the arbitrator had already read the ERISA discrimination claim into his demand" is irrelevant according to the Majority. *Id.* at 9. What is relevant is that "Bonday didn't mention ERISA or discrimination anywhere in his arbitration *demand*, and he didn't ask for damages as a result of any discrimination." *Id.* at 8 (emphasis added).

As the Majority sees it, the arbitrator, "serv[ing] as de facto counsel" for Bonday, "rewrote Bonday's demand to include an ERISA discrimination claim and concluded it was arbitrable." *Id.* at 10. The Majority says that Bonday, when asked at oral argument for evidence that he actually put forward an ERISA discrimination claim, "admitted there was no record of him submitting this claim to the arbitrator." *Id.* at 9. "So Bonday's case is exactly like *Davis*—

22-13546          TJOFLAT, J., Dissenting          57

the arbitrator decided a claim that Bonday never submitted for arbitration." *Id.*

What Bonday should have done in order to avoid the Majority's disposition of his ERISA claim, I suppose, was move the arbitrator to amend his Demand pursuant to AAA Rule 5.[22] The Majority seems to insist that this was the only way the arbitrator could adjudicate the claim. Otherwise, says the Majority, the arbitrator would be serving as the claimant's de facto counsel. But that is simply not so.

By alluding to a lack of record evidence, the Majority seemingly tries to evade the possibility that the arbitrator noticed Bonday's ERISA discrimination claim at least at the Arbitration Management Conference held pursuant to AAA Rule 8 on August 27, 2021. The Conference was among the parties' first opportunities to interact with the arbitrator. Nalco rejected that opportunity. It refused to participate in the arbitration of Bonday's Demand because it was convinced that the arbitrator, contrary to AAA Rule 6, lacked jurisdiction to pass on the issue of arbitrability. Nalco should not

---

[22] AAA Rule 5 states in relevant part: "After the appointment of arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator." The Majority seems to presume that a party offering a new or different claim after the arbitrator is appointed must do so in writing. But there is no evidence for that requirement in the plain text of Rule 5, and AAA Rule 48 confers on *the arbitrator* the power to "interpret and apply these rules as they relate to the arbitrator's powers and duties."

58                          Tjoflat, J., Dissenting                          22-13546

now receive the benefit of the doubt on a record that makes eminently clear what was discussed that day.

What the arbitrator and Bonday said to one another during the Conference, the words actually spoken, is not in the record because the Conference was not transcribed. But we know what took place by reference to the AAA Rules. AAA Rule 8 lists "the matters to be considered" at the Management Conference, "includ[ing], without limitation: i. the issues to be arbitrated . . . [and] xiii. the specification of undisclosed claims." We can safely presume that the arbitrator's discussion of these two matters with Bonday led her to state in her November 23 order that Bonday's Demand "may be raising" claims that the "disparate treatment" he received violated ERISA and amounted to "age discrimination under state or federal law."[23]

Matter "xiii" of AAA Rule 8 required the arbitrator to discuss with Bonday whether he had any unspecified claims to raise. As the arbitrator wrote in her November 23 order, Bonday "repeatedly stated he was not treated the same as other similarly situated employees who were given the requested [Severance Plan] benefits." As I read the Majority's opinion, if Bonday, without any prompting by the arbitrator, told the arbitrator that his disparate treatment may have violated ERISA¸ he would be home free. The Majority would hold that the District Court erred in vacating the arbitrator's

---

[23] AAA Rule 8 further provides that "[t]he arbitrator shall issue oral or written orders reflecting his or her decisions on the [sixteen listed] matters and may conduct additional conferences when the need arises."

Final Award. But because the arbitrator was seemingly the first to utter the word "ERISA," Bonday loses.

The Majority would be wrong even if we accepted its flawed premise that Bonday did not submit an ERISA claim as early as his initial Demand. After all, the arbitration was assigned to one of AAA's pro se managers for a reason: Bonday is not a lawyer. If he was, his Demand might have labeled the ERISA claim the arbitrator noted in her November 23 order. But the arbitrator, as a lawyer, recognized in the factual allegations of Bonday's Demand the elements of the ERISA and age discrimination claims described in her November 23 order. If the claims were not technically submitted in Bonday's Demand, that would make them "undisclosed claims" in the language of AAA Rule 8.

The relevant question, then, would be whether the arbitrator exceeded her powers in noticing an ERISA discrimination claim during the Management Conference—presumably during the discussion of matter "xiii. the specification of undisclosed claims." AAA Rule 8 required her to ask Bonday whether he had any undisclosed claims. If the ERISA claim came to light then, did the arbitrator thereafter "serve as de facto counsel for [Bonday] or . . . rewrite an otherwise deficient pleading"? The Majority thinks so.

Even in federal court, the rewriting of pleadings sometimes occurs while a district judge is conducting a pretrial conference pursuant to Rule 16 of the Federal Rules of Civil Procedure or the judge's inherent power to manage pending litigation. Rule 16(c)(2),

60                    TJOFLAT, J., Dissenting                    22-13546

which lists the "Matters for Consideration" at a pretrial conference, states:

> At any pretrial conference, the court may consider and take appropriate action on the following matters:
>
> (A) formulating and simplifying the issues, and eliminating frivolous claims or defenses;
>
> (B) amending the pleadings if necessary or desirable
>
> . . . .

Many district judges draw on this aspect of Rule 16 and their inherent power in managing the litigation before them—specifically, to simplify the parties' controversy. In this day and age of multi-count shotgun pleadings and answers asserting scores of affirmative defenses, a pretrial conference is convened early on—much like how arbitrators convene a AAA Rule 8 Arbitration Management Conference—to narrow the issues to be tried, or to squeeze them down. Not infrequently, in the give and take between the court and counsel, the district judge winds up effectively "rewriting" a deficient pleading or granting a litigant leave to amend its pleadings to reflect what occurred during the conference. In the Majority's words, is the judge "serving as de facto counsel for a party"? Or is the judge serving the public—saving time and resources for the benefit of litigants queued up to be heard—and maintaining the stability of the rule of law? I say it is the latter, and the arbitrator's conduct was fully consistent with

both the AAA Rules *and* the prevailing law. It is the *Majority* that rewrites the AAA Rules, and that is not our role.

Here, unlike in *Davis*, both parties had notice and a full opportunity to be heard on the disputed claim. In her November order, before any hearings on the merits, the arbitrator informed Nalco that Bonday had raised claims possibly including ERISA and age discrimination. Nalco acknowledged this notice but still refused to participate in the arbitration. It did so at its own peril.

## V.  Conclusion

The Majority insists that Bonday never raised the ERISA issue himself, so he could not have submitted it for arbitration, but that reasoning is wrong twice over. First, regardless of whether the Majority would have done the same, the arbitrator construed Bonday's Demand to include the ERISA claim. In other words, Bonday *did* raise the claim as early as his initial Demand, yet the Majority insists he should have done so *again*. And second, the Majority completely ignores the fact that Bonday *did* present evidence of both age discrimination and the ERISA violation at the hearing that Nalco refused to attend. It is hard to imagine how Bonday could have presented a fuller case, yet the Majority insists he never submitted the claim.

The Majority also mischaracterizes the relief sought in Bonday's initial Demand. It is true, as the Majority notes, that Bonday styled his Demand largely as a request that Nalco "follow the . . . Severance Policy." But the relief he requested was money, plain and simple. In the part of the Demand form titled "Amount of

Claim," he wrote "$129,461," which he calculated based on "36 weeks salary per [the] Ecolab Severance Policy" for qualifying employees. He wanted $129,461, and the arbitrator awarded him $122,870. To override that award would again require us to override a perfectly reasonable interpretation of AAA Rule 4, which requires notice only of the "amount in controversy, if any; [and] the remedy sought."

Finally, the Majority seemingly acknowledges that Bonday could have amended his Demand to more clearly state an ERISA discrimination claim. Maj. Op. at 10. AAA Rule 5 provides that "[a]fter the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator." So Bonday probably could have amended his Demand to comply with the Majority's holding, but nothing in the AAA Rules *required* him to do so. That is partly because Bonday never offered a *new* or *different* claim. Again, the arbitrator addressed only those claims that she understood to have already been raised in Bonday's initial Demand. But even assuming he did offer new claims, nothing in AAA Rule 5 suggests he could do so only by amending his Demand. Simply put, the arbitrator did not have to follow rules that do not exist.[24]

---

[24] The Court's opinion also calls into question the validity of AAA Rule 8, which requires that the parties and the arbitrator hold an arbitration management conference. The rule lists various "matters to be considered" at the conference, including "the specification of undisclosed claims." I find this rule hard to square with the Court's opinion, which seems to insist that any arbitrable claim must arise directly from the claimant's demand. *See* Maj. Op. at 8. This

22-13546                TJOFLAT, J., Dissenting                63

Under the relevant AAA Rules, Bonday's ERISA discrimination claim was submitted and decided. Arbitration is not a second-tier courtroom; it is a forum shaped by the parties' own choices and designed to avoid the rigidities of judicial procedure. The Majority's approach does the opposite, wrapping arbitration in procedural red tape that the FAA was meant to cut. Nalco got the arbitration it signed up for. It should not be allowed to back out now. I dissent.

⋆              ⋆              ⋆

At all times during the prosecution of Nalco's lawsuit against Bonday and its motion for vacatur of the arbitrator's final award, Nalco's lawyers—Jackson Lewis PC, René Thorne, and Valerie Hooker—had to have been aware of the decisions of the United States Supreme Court and this Court cited in this dissent regarding the FAA and the arbitration of disputes under the AAA Rules. They were also aware, as officers of the court, of their duty to inform the District Court of those decisions, especially those adverse to positions they were taking in the lawsuit and in moving for vacatur of the award.[25] But they failed to discharge that duty.

---

is but one example of how today's holding could upend AAA's carefully designed rules, forcing parties into a procedural minefield where court formalities override arbitrators' explicit guidance.

[25] The American Bar Association's Model Rules of Professional Conduct provide that lawyers must exhibit candor toward courts. Specifically, Rule 3.3 states:

(a) A lawyer shall not knowingly:

64                    TJOFLAT, J., Dissenting                    22-13546

Rule 11 of the Federal Rules of Civil Procedure codifies this duty of candor to the tribunal. It provides, in subsection (b) "Representations to the Court":

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending,

---

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; [or]

(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

The same principle is codified in the Rules Regulating The Florida Bar. Rule 4-3.3 provides:

(a) False Evidence; Duty to Disclose. A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; . . . [or]

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

22-13546            TJOFLAT, J., Dissenting            65

modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(2).

Subsection (c), "Sanctions," authorizes district courts to determine, on their own initiative, whether a lawyer should be sanction for misrepresenting the status of existing law to the district court. It provides in subpart (1):

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

*Id.* 11(c)(1).

I would instruct the District Court, on receipt of our mandate in this case, to enter an order in conformance with subsection (c)(1) and determine whether Jackson Lewis PC, Thorne, and Hooker misinformed the Court as to the state of the relevant law in prosecuting Nalco's lawsuit against Bonday and Nalco's motion for vacatur.